UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TRYN PARKER,

                    Plaintiff,                          **DECISION AND ORDER**

          v.                                            6:25-CV-06438 EAW

AARON KRAHAM, Homeland Security
Investigator in Individual and Official
Capacity; SEAN ELDRIDGE, Assistant
United States Attorney in Individual and
Official Capacity; EDMOND BERNABEI,
Investigator MCDAO, in Individual and
Official Capacity; ERIN ROGERS,
Investigator/ Detective, in Individual and
Official Capacity; AGENT J. LACOLLA,
Customs and Border Protection, in Individual and
Official Capacity; DAN ROOT, Deputy,
in Individual and Official Capacity;
INVESTIGATOR C. BURGSTROM, In
Individual and Official Capacity; P. STEINER,
Investigator, In Individual and Official Capacity;
SGT. JAMES MORSE, In Individual and
Official Capacity; DEPUTY BRET ZAWADZKI,
In Individual and Official Capacity;
AGENT ADAM ECKERD, In Individual and
Official Capacity; SGT. BENNETT, In Individual
and Official Capacity; DETECTIVE R. HICKEY,
In Individual and Official Capacity; P. HICKEY,
Police Officer, In Individual and Official Capacity;
OFFICER JAKES, In Individual and Official Capacity;
SGT. PAGAN, In Individual and Official Capacity;
POLICE OFFICER JIMENEZ, In Individual and
Official Capacity; OFFICER WILKES, In Individual
and Official Capacity; POLICE OFFICER LAUREANO,
In Individual and Official Capacity; SGT.
JOHNSON, In Individual and Official Capacity;
SGT. SLOWIK, In Individual and
Official Capacity; HON. COLLEEN D. HOLLAND,
United States Magistrate Judge, In Individual and

Official Capacity; ROCHESTER POLICE DEPARTMENT; MONROE COUNTY SHERIFF'S OFFICE; UNITED STATES CUSTOMS AND BORDER PROTECTION; and HOMELAND SECURITY INVESTIGATIONS,

Defendants.

_____

*Pro se* plaintiff Tryn Parker ("Parker" or "Plaintiff") is a federal pretrial detainee confined at the Monroe County Jail.  He is charged with two co-defendants by criminal complaint in an ongoing federal prosecution arising from search warrants executed on March 31, 2025, including at an alleged stash house located at 29 Avenue C in Rochester, New York.  *United States v. Poole, III*, 6:25-mj-04034-CDH, Dkt. 1 (W.D.N.Y. April 4, 2025).  Parker filed a complaint asserting claims under 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) arising from the search of his person, his initial arrest,[1] and the use of fabricated evidence to initiate his criminal prosecution in federal court and keep him detained pending trial.  (Dkt. 1 at 4, 10-13).[2]  He also submitted a motion to proceed *in forma pauperis* ("IFP") with the required affirmation, certification, and authorization (Dkt. 2), and has filed a motion for immediate release (Dkt. 4), and a motion to appoint counsel (Dkt. 5).

---

[1]      Plaintiff's allegations suggest he was initially arrested, "charged, booked, and arraigned" on state charges and later prosecuted by federal criminal complaint.  (Dkt. 1 at 11-13) ("the AUSA took jurisdiction of the case from the state").

[2]      All docket reference are to this action unless otherwise noted.

Because Plaintiff meets the requirements of 28 U.S.C. § 1915(a) and filed the required documents, he is granted permission to proceed IFP. The Court therefore screens the complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a)-(b).

For the reasons below, the following are dismissed without leave to amend: all claims against Hon. Colleen D. Holland, Sean Eldridge, Aaron Kraham, Agent J. LaColla, Agent Adam Eckerd, United States Customs and Border Protection,[3] Homeland Security Investigations, Rochester Police Department, Monroe County Sheriff Office, and the § 1983 malicious prosecution and fair trial claims against the remaining defendants. Plaintiff may amend to clarify his allegations supporting his unlawful search and false arrest claims against the individual Municipal Defendants (defined below) and to attempt to allege that the constitutional violations were caused by a policy or custom of Monroe County or the City of Rochester. Plaintiff's pending motions (Dkt. 4; Dkt. 5) are denied without prejudice.

## DISCUSSION

I.    **Legal Standards**

A.    **Review Under the IFP Statutes**

A court shall dismiss a complaint in a civil action in which a prisoner seeks redress from a governmental entity, or an officer or employee of a governmental entity, if the court determines the action "(1) is frivolous, malicious, or fails to state a claim upon which relief

---

[3]    Parker names this defendant as United States Customs and Border Patrol, and the Clerk's office recorded the defendant as United States Customs and Border Control. The correct name is United States Customs and Border Protection. The Clerk of Court is directed to correct the defendant's name to the correct one.

may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2); *see* 28 U.S.C. § 1915(e)(2)(B) (setting forth the same criteria for dismissal).

### B. Pleading Standards

In evaluating a complaint, a court must "accept all of the facts alleged in the complaint as true and draw all inferences in the plaintiff's favor." *Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). Although "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), even a *pro se* complaint must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint states a claim for relief if the claim is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In other words, although a *pro se* complaint need not provide every last detail in support of a claim, it must allege sufficient factual allegations to nudge the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. *See Komatsu v. Cubesmart, Daniels Norelli Cecere & Tavel PC*, No. 20-3676-CV, 2021 WL 6060603, at *1 (2d Cir. Dec. 20, 2021) (to avoid *sua sponte* dismissal under the IFP statute, "a complaint must plead 'enough facts to state a claim to relief that is plausible on its face'" (quoting Twombly, 550 U.S. at 570)); *Scott*

*Phillip Lewis v. R.L. Vallee, Inc., d.b.a. Maplefield's*, No. 24-1438, 2025 WL 1077412, at *1 (2d Cir. Apr. 10, 2025) (same).

The Court's liberal pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint fails to state a claim if it supplies only "labels and conclusions," *Twombly*, 550 U.S. at 555, "a formulaic recitation of the elements of a cause of action," *id.*, or "'naked assertions' devoid of 'further factual enhancement,'" *Iqbal*, 556 U.S. at 678 (alteration omitted) (quoting *Twombly*, 550 U.S. at 557). Although a court is "obligated to draw the most favorable inferences that [a plaintiff]'s complaint supports, [it] cannot invent factual allegations that he [or she] has not pled." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

## C.    Section 1983 Claims

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To establish liability against an official under § 1983, a plaintiff must allege that individual's personal involvement in the alleged constitutional violation; it is not enough

to assert that the defendant is a link in the chain of command. *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004). Moreover, the theory of *respondeat superior* is not available in a § 1983 action. *See Hernandez v. Keane*, 341 F.3d at 137, 144 (2d Cir. 2003). There is "no special rule for supervisory liability." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). Rather, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id.* (quoting *Iqbal*, 556 U.S. at 676).

    **D.    Leave to Amend**

Generally, a court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal, unless it "can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (quoting *Gomez v. USAA Federal Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999)). But a court may deny leave to amend pleadings when any amendment would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive . . . it is not an abuse of discretion to deny leave to amend.").

**II.    Allegations**

Plaintiff has sued the Rochester Police Department ("RPD"), RPD Detective Erin Rogers ("Rogers"), RPD Investigator C. Burgstrom ("Burgstrom"), RPD Investigator P. Steiner ("Steiner"), RPD Sgt. Bennett ("Bennett"), RPD Detective R. Hickey ("R. Hickey"), RPD Officer P. Hickey ("P. Hickey"), RPD Officer Jakes ("Jakes"), RPD Sgt.

Pagan ("Pagan"), RPD Officer Jimenez ("Jimenez"), RPD Officer Wilkes ("Wilkes"), RPD Officer Laureano ("Laureano"), RPD Sgt. Johnson ("Johnson"), RPD Sgt. Slowik ("Slowik"), Monroe County District Attorney's Office Investigator Edmond Bernabei ("Bernabei"), the Monroe County Sheriff['s] Office ("MCSO"), MCSO Deputy Dan Root ("Root"), MCSO Sgt. James Morse ("Morse"), and MCSO Deputy Bret Zawadzki ("Zawadzki") (collectively, the "Municipal Defendants").

He also has sued a number of federal defendants, including United States Customs and Border Protection ("CBP"), CBP Agent J. LaColla ("LaColla"), CBP Agent Adam Eckerd ("Eckerd"), Homeland Security Investigations ("HSI"), HSI Investigator Aaron Kraham ("Kraham"), Assistant United States Attorney Sean Eldridge ("Eldridge"), and the Honorable Colleen D. Holland, United States Magistrate Judge ("Judge Holland") (collectively, the "Federal Defendants").

Plaintiff alleges violations of his constitutional rights arising from the search of his person, his initial arrest, and the use of fabricated evidence to initiate his criminal prosecution in federal court and keep him detained pending trial. (Dkt. 1 at 11-13).

On March 31, 2025, Plaintiff went to a friend's house at 29 Avenue C in Rochester, New York to borrow $85. (Dkt. 1 at 10-12). Recently released from the hospital following a "major surgery," Plaintiff was using a walker to ambulate. (*Id.* at 11). While Plaintiff waited on his friend, Frederick L. Poole, III ("Poole"), the Municipal Defendants, as well as CBP Agents Eckerd and LaColla, executed a search warrant directed at Poole, who was the target of their investigation. (*Id.* at 5-6, 11-12). Even though Plaintiff was not named in the search warrant, had no connection to the house—other than his friend living there—

and officers found nothing to connect him to criminal activity in their search of the house, they conducted a "full body search of his person" and arrested, "charged, booked, and arraigned" him. (*Id.* at 11-12). Plaintiff was "denied bail and held in custody." (*Id.* at 12). The Municipal Defendants and Eckerd and LaColla "frame[d Plaintiff] by fabricating a connection [between him] and the contraband found." (*Id.*).

Four days after Plaintiff's state arrest, Kraham "forwarded the embellished facts of [Plaintiff's] illegal arrest to AUSA Eldridge, who in turn decided to prosecute [him] federally . . . using the fabricated evidence." (*Id.* at 12-13). Kraham and Eldridge "conspired to charge [him] in a fabricated conspiracy and[ ] possession charges[ ] that [Eldridge] manufactured falsely [his] involvement in." (*Id.* at 13). With no "probable cause and no supporting details or facts [Judge Holland] issued the complaint to arrest [Plaintiff]." (*Id.*). Judge Holland arraigned Plaintiff on April 7, 2025, and denied him pretrial release based "on the fabricated evidence." (*Id.*). As of the filing of the instant complaint, Plaintiff remained in custody. (*Id.*). Plaintiff seeks monetary damages. (*Id.* at 14). Liberally construed, the complaint asserts claims for unlawful search, false arrest, malicious prosecution, and denial of a fair trial.

## III.    Analysis

### A.    Claims Dismissed without Leave to Amend

#### 1.    Federal Agencies and their Officials in Official Capacity

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475, 486 (1994). "Because an action against . . . federal officers in their official capacities is essentially a suit against the United

States, such suits are also barred under the doctrine of sovereign immunity, unless such immunity is waived." *Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994). As relevant here, the Supreme Court has "unanimously declined an invitation to extend *Bivens* to permit suit against a federal agency" and so, immunity has not been waived for Plaintiff's suit against the federal agencies and the individual federal defendants in their official capacities. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 69 (2001).

For these reasons the official capacity claims against Judge Holland, Eldridge, LaColla, Eckerd, and Kraham and the claims against CBP and HSI are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2) without prejudice and without leave to amend. *See F.D.I.C.*, 510 U.S. at 475 ("Sovereign immunity is jurisdictional in nature. Indeed, the terms of the United States' consent to be sued in any court define that court's jurisdiction to entertain the suit." (quotation and alteration omitted)); *Wozar v. Campbell*, 763 F. Supp. 3d 179, 208 (D. Conn. 2025) (finding that "it would be futile to replead facts [against the federal defendants] in light of sovereign immunity"); *accord Harrison v. New York*, 95 F. Supp. 3d 293, 305-06 (E.D.N.Y. 2015).

### 2.    Judge Holland in Individual Capacity

Judges enjoy absolute immunity unless the judge takes an action outside of his or her judicial capacity or in the complete absence of all jurisdiction. *See Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). Judicial immunity "is to ensure 'that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'" *Paulk v. Kearns*, 596 F. Supp. 3d 491, 496 (W.D.N.Y. 2022) (quoting *Bradley v. Fisher*, 80 U.S. 335, 347 (1871)).

Such immunity is therefore not overcome by "allegations of bad faith or malice," *Mireles*, 502 U.S. at 11, or because the actions were taken "in error" or "in excess of . . . authority," *id. at* 13 (quoting *Stump v. Sparkman*, 435 U.S. 349, 356 (1978)).

Plaintiff's allegations make clear that the actions of which he complains were judicial actions taken by Judge Holland in connection with Plaintiff's federal criminal prosecution. There are no allegations that Judge Holland took action outside of her judicial capacity or in the complete absence of all jurisdiction.

Plaintiff's claims against Judge Holland are therefore dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(i), (iii) and 1915A(b)(1), (2) on the basis of immunity and as legally frivolous without leave to amend. *Tewari v. Sattler*, No. 23-36-CV, 2024 WL 177445, at *2 (2d Cir. Jan. 17, 2024) ("[B]ecause it is 'unmistakably clear' based on the allegations in the complaint that judicial immunity applies in this particular case and that the claims are thus legally frivolous, the district court was not required to provide [the plaintiff] with notice and an opportunity to be heard prior to the dismissal." (quoting *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 82 (2d Cir. 2018))); *Mills v. Fischer*, 645 F.3d 176, 177 (2d Cir. 2011) ("Any claim dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of 28 U.S.C. § 1915(g).").

### 3.    Eldridge in Individual Capacity

Federal prosecutors are entitled to absolute immunity for performing prosecutorial activities that are "intimately associated with the judicial phase of the criminal process." *Hill v. City of New York*, 45 F.3d 653, 660-61 (2d Cir. 1995) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)); *Bouchard v. Olmsted*, 775 F. App'x 701, 703 (2d Cir. 2019)

(applying prosecutorial immunity to a federal prosecutor).   "[G]enerally only (a) the prosecutor's decisions with regard to whether or not to institute a prosecution and (b) his performance of his litigation-related duties are given the shield of absolute immunity.  Most other activities are characterized as administrative or investigative and, thus, merit less protection."  *Ying Jing Gan v. City of New York*, 996 F.2d 522, 530 (2d Cir. 1993) (citation modified).

In *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993), the United States Supreme Court reasserted the following:

> acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate . . . , are entitled to the protections of absolute immunity.  Those acts must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made.

*Id.* at 273.   Functions "covered" by the doctrine of absolute prosecutorial immunity, "include, among others, deciding which offenses to charge, presenting the case at trial, and evaluating and organizing evidence for presentation at trial or to a grand jury."  *Mitchell v. Elliot*, No. 18-CV-6676, 2019 WL 135555, at *2 (E.D.N.Y. Jan. 8, 2019) (citing *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995)); *see Marino v. Mobila*, No. 94 CV 5003, 1997 WL 778783, at *4 (E.D.N.Y. Dec. 15, 1997) (holding that prosecutor's role "in arguing in favor of Plaintiff's pretrial incarceration clearly falls within the sphere of prosecutorial immunity").

Plaintiff alleges that Eldridge presented fabricated evidence to the federal district court to obtain a criminal complaint and to keep Plaintiff detained pending trial.  (Dkt. 1 at

12-13).   Eldridge's actions, even if undertaken with malice, fall squarely within a prosecutor's traditional prosecutorial functions and, thus, Eldridge is entitled to prosecutorial immunity.

The fact that Plaintiff's claims are framed as a conspiracy between Kraham and Eldridge does not change the analysis. (Dkt. 1 at 13).  "[A]bsolute immunity extends even to a prosecutor who 'conspir[es] to present false evidence at a criminal trial.  The fact that such a conspiracy is certainly not something that is properly within the role of a prosecutor is immaterial, because the immunity attaches to his function, not to the manner in which he performed it.'"  *Anilao v. Spota*, 27 F.4th 855, 864 (2d Cir. 2022) (alteration in original) (quoting *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994)).

Accordingly, Plaintiff's claims against Eldridge in his individual capacity are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).  As discussed in the next section, the Court cannot extend a *Bivens* remedy to the claims against Eldridge.  Consequently, amendment would be futile and dismissal is without leave to amend.

4.   <u>Eldridge, Kraham, LaColla, and Eckerd in Individual Capacity</u>

As a federal prosecutor, an HSI investigator, and CBP agents, Eldridge, Kraham, LaColla, and Eckerd are federal employees.  Federal employees "are not deemed persons acting under color of state law pursuant to 42 U.S.C. § 1983."  *Mighty v. Siguenza*, No. 21-CV-6487-FPG, 2021 WL 4085442, at *3 (W.D.N.Y. Sept. 8, 2021).  Instead, it is the judicially created *Bivens* action that affords "the victims of a constitutional violation by a federal agent . . . a right to recover damages against the official in federal court[.]"

*Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006) (quoting *Carlson v. Green,* 446 U.S. 14, 18 (1980)).

Notwithstanding its creation of the remedy, "the Supreme Court has [repeatedly] warned that the *Bivens* remedy is an extraordinary thing that should rarely if ever be applied in 'new contexts.'" *Arar v. Ashcroft*, 585 F.3d 559, 571 (2d Cir. 2009) (quoting *Malesko*, 534 U.S. at 69). Indeed, the Supreme Court has "made clear that, in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts." *Egbert v. Boule*, 596 U.S. 482, 486 (2022). Consequently, district courts must engage in a *Bivens* analysis before permitting any *Bivens* claim to proceed to trial, *Ziglar v. Abbasi*, 582 U.S. 120, 139-40 (2017), and reject a *Bivens* claim when: (1) the claim presents a new *Bivens* context, and (2) special factors counseling hesitation are present, *Hernandez v. Mesa*, 589 U.S. 93, 102 (2020).

A case presents "a new *Bivens* context" when it is "meaningfully different from the three cases in which the [Supreme] Court has implied a damages action." *Egbert*, 596 U.S. at 492 (citation modified). *Bivens*, *Carlson*, and *Davis v. Passman,* 442 U.S. 228 (1979) "represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Ziglar*, 582 U.S. at 131. The plaintiff in *Bivens* asserted claims for unreasonable search, seizure, and excessive force under the Fourth Amendment. 403 U.S. at 389. The plaintiff in *Davis* asserted a claim of employment discrimination under the Due Process Clause of the Fifth Amendment. 442 U.S. at 230-31. And *Carlson* asserted Eighth Amendment claims for inadequate medical treatment of a convicted prisoner. 446 U.S. at 16 n.1.

One of the many special factors counseling hesitation is the availability of "alternative methods of relief." *Ziglar*, 582 U.S. at 145 (noting that "when alternative methods of relief are available, a *Bivens* remedy usually is not").

Applying the two-part inquiry, it is apparent that a *Bivens* remedy is not available for Parker's claims as asserted against Eldridge, Kraham, LaColla, and Eckerd.

     a. <u>New Context</u>

Of the three cases for which the Supreme Court has implied a damages action against federal employees, only *Bivens* is remotely similar to the instant case. But *Bivens* asserted claims against federal agents based on injuries caused by the warrantless search of his home, his arrest without probable cause, and the unreasonable force employed in making the arrest, 403 U.S. at 389, while Plaintiff contends that the injuries caused by the federal defendants emanate from the fabrication of evidence used to secure the federal criminal complaint against him and keep him incarcerated pending trial. (Dkt. 1 at 11-13). In sum, Plaintiff seeks to remedy wrongs caused by Eckerd and LaColla who "frame[d Plaintiff] by fabricating a connection [between him] and the contraband found," by Kraham for "forward[ing] the embellished facts of [Plaintiff's] illegal arrest to AUSA Eldridge," and by Eldridge when he "in turn decided to prosecute [Plaintiff] federally . . . using the fabricated evidence." (Dkt. 1 at 12-13). This distinction—claims involving the fabrication of evidence—presents a meaningful difference, resulting in a new context under *Bivens*. *See Sigalovskaya v. Braden*, 149 F.4th 226, 234 (2d Cir. 2025) ("In recent years, our sister circuits have found that claims involving the fabrication of evidence present a new *Bivens* context.") (Lee, J., concurring); *Selvam v. United States*, 570 F. Supp. 3d 29, 43 (E.D.N.Y.

2021) (holding that *Bivens* does not provide a cause of action for fabrication of evidence), *aff'd on other grounds*, No. 21-2513-CV, 2022 WL 6589550 (2d Cir. Oct. 11, 2022); *Powell v. United States*, No. 19 CIV. 11351 (AKH), 2020 WL 5126392, at *7-8 (S.D.N.Y. Aug. 31, 2020) (holding that malicious prosecution and due process claims based on fabrication of evidence presented a new *Bivens* context); *Butler v. Hesch*, No. 1:16-CV-1540-MAD-CFH, 2020 WL 1332476, at *12 (N.D.N.Y. Mar. 23, 2020) (finding that the case presented a new context where "ATF Defendants initiated and continued a prosecution . . . without probable cause and that they misled prosecutors and the court by omitting material and exculpatory information when bringing charges"); *Annappareddy v. Pascale*, 996 F.3d 120, 137 (4th Cir. 2021) (declining to recognize cause of action for fabrication of evidence under *Bivens*); *Cantú v. Moody*, 933 F.3d 414, 421 (5th Cir. 2019) (same); *Farah v. Weyker*, 926 F.3d 492, 502 (8th Cir. 2019) (same); *Sheikh v. U.S. Dep't of Homeland Sec.*, 106 F.4th 918, 925 (9th Cir. 2024) ("Dr. Sheikh's allegations bear little resemblance to the warrantless search and seizure in *Bivens*. . . .  Rather, Dr. Sheikh alleges that defendants 'procured and submitted false evidence against her to have her indicted on fabricated charges of human trafficking.'").

Even if Plaintiff could plausibly suggest that the search in *Bivens*[4] parallels the search of his person at 29 Avenue C, and that LaColla and Eckerd indeed conducted that

---

[4]     As recited by the Second Circuit:

    [*Bivens*'s] complaint alleged that . . . agents of the Federal Bureau of Narcotics acting under claim of federal authority, entered his apartment and arrested him for alleged narcotics violations.  The agents manacled petitioner

search or were involved in his initial arrest,[5] CBP agents are a new category of defendants. The Supreme Court has held that *Bivens* should not be extended to a "new category of defendants". *Malesko*, 534 U.S. at 68. That a *Bivens* remedy has not previously been extended to federal prosecutors like Eldridge, HSI agents like Kraham, and CBP agents like LaColla and Eckerd, provides a second basis on which to find that this case presents a new context. *See Egbert*, 596 U.S. at 496 ("[W]e ask here whether a court is competent to authorize a damages action not just against [CBP] Agent Egbert but against Border Patrol agents generally. The answer, plainly, is no."); *Andrews v. Town of W. Seneca*, No. 21-CV-746-LJV, 2025 WL 959658, at *21 (W.D.N.Y. Mar. 31, 2025) ("CBP officers are a 'new category of defendants' not present in prior *Bivens* claims.") (quoting *Darwish v. Pompeo*, No. 18-CV-1370-LJV-MJR, 2022 WL 831332, at *8-10 (W.D.N.Y. Mar. 21, 2022)); *Oehler v. Nietzel*, No. 23-CV-00956 (JLS)(JJM), 2024 WL 4989300, at *9 (W.D.N.Y. Aug. 6, 2024) (case presented a new context where allegations were made regarding "the conduct of CBP and HSI employees"), *report and recommendation adopted*, 2024 WL 4661160 (W.D.N.Y. Oct. 31, 2024); *Sheikh*, 106 F.4th at 925 (holding that the plaintiff's claims presented a new *Bivens* context due to "differing legal mandates" between an HSI

---

in front of his wife and children, and threatened to arrest the entire family. They searched the apartment from stem to stern. Thereafter, petitioner was taken to the federal courthouse in Brooklyn, where he was interrogated, booked, and subjected to a visual strip search.

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 456 F.2d 1339, 1341-42 (2d Cir. 1972).

[5]     Plaintiff alleges that nineteen defendants searched and arrested him at 29 Avenue C, LaColla and Eckerd among them. (Dkt. 1 at 11-12).

agent and a Federal Bureau of Narcotics officer; "[s]uch differences alone make this a new *Bivens* context"); *but see Sigalovskaya*, 149 F.4th at 232 (finding a federal agency distinction, standing alone, "unpersuasive") (Lee, J., concurring); *see also Quinones-Pimentel v. Cannon*, 85 F.4th 63, 72 (1st Cir. 2023) (collecting cases that conclude federal prosecutors are a new category of defendants); *Annappareddy*, 996 F.3d at 134 (holding that for *Bivens* purposes, federal prosecutors are "a new set of defendants").

The claims against Eldridge, Kraham, LaColla, and Eckerd therefore arise in a new context.

### b. Alternative Forms of Relief

If Plaintiff is convicted, he will have available to him an alternative form of judicial relief—specifically, a habeas petition. *See Cohen v. Trump*, No. 23-35, 2024 WL 20558, at *3 (2d Cir. Jan. 2, 2024) (declining to extend *Bivens* for alleged violations of Fourth and Eighth Amendment rights where the plaintiff had habeas relief available), *cert. denied*, 145 S. Ct. 415 (2024); *see also Ziglar*, 582 U.S. at 145 (observing that "the habeas remedy, if necessity required its use, would have provided a faster and more direct route to relief than a suit for money damages").

Additionally, Plaintiff has a federal remedy with respect to the law enforcement officers under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680, which provides "just the sort of alternative remedial scheme that counsels against judicial

expansion of *Bivens*."[6] *Edwards v. Gizzi*, 107 F.4th 81 (2d Cir. 2024) (Park, J., concurring); *see also Turkmen v. Ashcroft*, No. 02-CV-2307 (DLI) (SMG), 2018 WL 4026734, at *10 (E.D.N.Y. Aug. 13, 2018) (collecting cases that, since *Ziglar*, "have declined to permit *Bivens* claims to proceed because the FTCA provides an adequate alternative remedy"), *report and recommendation adopted*, 2021 WL 4099495 (E.D.N.Y. Sept. 9, 2021).  The law enforcement provision of the FTCA "extends the waiver of sovereign immunity to claims for six intentional torts . . . that are based on the 'acts or omissions of investigative or law enforcement officers.'"  *Millbrook v. United States*, 569 U.S. 50, 52-53 (2013) (quoting 28 U.S.C. § 2680(h)).  The six intentional torts to which it applies are "assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution."  28 U.S.C. § 2680(h).

Alternatively, Plaintiff can utilize the Department of Homeland Security's Office of the Inspector General grievance procedures, *see* 8 C.F.R. § 287.10, to report any misconduct by LaColla, Eckerd, or Kraham.  This further supports a conclusion that Parker's *Bivens* claim against LaColla, Eckerd, and Kraham is foreclosed because of this alternative remedial scheme.  *See, e.g., Pettibone v. Russell*, 59 F.4th 449, 456-57 (9th Cir.

---

[6]    While Plaintiff could potentially attempt to pursue a claim under the FTCA, the Court has not construed the complaint as making such a claim because Plaintiff does not name the United States as defendant as required by 28 U.S.C. § 1346.  There is also nothing in the record before the Court to suggest that Plaintiff exhausted his administrative remedies by presenting his claim to the appropriate federal agency as required by 28 U.S.C. § 2675(a).  This requirement "is jurisdictional and cannot be waived."  *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005).  In other words, Plaintiff would need to pursue any potential FTCA claim before the appropriate federal agency before the claim could be asserted in federal district court.

2023) (explaining that "aggrieved parties can report any alleged misconduct to the Inspector General of the Department of Homeland Security, who must either investigate or refer the matter to the Officer for Civil Rights and Civil Liberties. . . . the Department can take corrective action against employees in response to the Inspector General's reports, . . . thus [making this remedy] comparable to the remedy deemed adequate in *Egbert*); *accord Sigalovskaya*, 149 F.4th at 235 (Lee, J. and Perez, J., concurring).

For all of these reasons, the Court cannot extend a *Bivens* remedy and Plaintiff's claims against Eldridge, LaColla, Eckerd, and Kraham in their individual capacities are dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Because amendment would be futile, dismissal is without leave to amend. *See Egbert*, 596 U.S. at 496 (a *Bivens* extension is inappropriate when "there is *any* rational reason (even one) to think that *Congress* is better suited to 'weigh the costs and benefits of allowing a damages action to proceed'" (quoting *Ziglar*, 582 U.S. at 136)).

5.    Claims against Municipal Law Enforcement Entities

"[U]nder New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued." *Perros v. County of Nassau*, 238 F. Supp. 3d 395, 400 (E.D.N.Y. 2017) (citation modified). For this reason, claims against the RPD and the MCSO are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim. Because amendment would be futile, these claims are dismissed without leave to amend. *Rech v. Siragusa*, No. 6:23-CV-6039 EAW, 2023 WL 2559409, at *7 (W.D.N.Y. Mar. 3, 2023) (dismissing Monroe County Sheriff's Department because it "is

merely an administrative arm of Monroe County and cannot be sued as a separate legal entity"); *Bradley v. Rochester Police Dep't*, No. 18-CV-6823-FPG, 2019 WL 3067281, at *1 (W.D.N.Y. July 12, 2019) (dismissing complaint as to Rochester Police Department because it is "an administrative arm of the municipal corporation" that "cannot sue or be sued").

6.    <u>Malicious Prosecution and Fair Trial (§ 1983)</u>

To state a malicious prosecution claim under § 1983, a plaintiff must allege "(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding," "(4) actual malice[,]" and "(5) a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Alexander v. City of Syracuse*, 132 F.4th 129, 158 (2d Cir. 2025) (citation modified).

"When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997). To state such a fair trial claim under § 1983, a plaintiff must plausibly allege that "(1) the officer created false information, (2) the officer forwarded the false information to prosecutors, (3) the false information was likely to influence a jury's decision, and (4) the plaintiff suffered a deprivation of life, liberty, or property as a result of the officer's actions." *Kee v. City of New York*, 12 F.4th 150, 168 (2d Cir. 2021).

*Heck v. Humphrey* holds:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]

512 U.S. 477, 486-87 (1994); *see McDonough v. Smith*, 588 U.S. 109, 121 (2019) (extending *Heck*'s reach to ongoing prosecutions). "In the context of § 1983 malicious prosecution cases, *Heck*'s bar is coextensive with the favorable termination requirement." *Poventud v. City of New York*, 750 F.3d 121, 131 (2d Cir. 2014). And "[w]here the plaintiff asserts a [§] 1983 fair-trial claim based on fabricated evidence, . . . the underlying criminal proceeding [must] be terminated in such a manner that the lawsuit does not impugn an *ongoing* prosecution or *outstanding* conviction." *Smalls v. Collins*, 10 F.4th 117, 139 (2d Cir. 2021), *abrogated on other grounds by Thompson v. Clark*, 596 U.S. 36 (2022). It is apparent that success on his malicious prosecution or fair trial fabricated evidence claim would call into question Plaintiff's ongoing prosecution. Consequently, the prosecution must end without a conviction before he may proceed with either claim.

The § 1983 malicious prosecution and fair trial claims are therefore dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) without leave to amend, but without prejudice to refiling in a new action if and when Plaintiff can show that his prosecution ended without a conviction.

B.       **Claims Dismissed with Leave to Amend**

1.       Individual Municipal Defendants in Official Capacity

"[A] suit against a municipal officer in his or her official capacity is functionally equivalent to a suit against the entity of which the officer is an agent." *Baines v. Masiello*, 288 F. Supp. 2d 376, 384 (W.D.N.Y. 2003) (citing, *inter alia*, *Kentucky v. Graham*, 473 U.S. 149, 166 (1985)).   Here, the individual Municipal Defendants are alleged to be employees of either the City of Rochester or Monroe County.   To hold the City of Rochester or Monroe County liable under § 1983, Plaintiff must show that the challenged action was performed pursuant to a municipal policy or custom.   *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978).

To state such a claim, often referred to as a "*Monell* claim," a plaintiff must plead three elements: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)).   An official policy or custom can be established by showing:

> (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom of which policymakers must have been aware; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised "deliberate indifference" to the rights of the plaintiff and others encountering those subordinates.

*Dean v. Town of Hempstead*, 527 F. Supp. 3d 347, 453 (E.D.N.Y. 2021) (citing cases).

Plaintiff does not contend that any of the alleged constitutional deprivations were caused by or occurred pursuant to an official custom or policy of Monroe County or the

City of Rochester, and thus Plaintiff's official capacity claims against the individual Municipal Defendants are dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Because Plaintiff is *pro se* he is granted leave to amend this claim to allege, if facts exist, that the constitutional violations were caused by a policy or custom of Monroe County or the City of Rochester. If Plaintiff attempts to replead this claim he may name Monroe County and/or the City of Rochester as the defendant in lieu of naming the individual Municipal Defendants in their official capacities.

### 2.    Unlawful Search and False Arrest (§ 1983)

Plaintiff lumping together his allegations against RPD officials Rogers, Burgstrom, Steiner, Bennett, R. Hickey, P. Hickey, Jakes, Pagan, Jimenez, Wilkes, Laureano, Johnson, Slowik, and Bernabei, and MCSO officials Root, Morse, and Zawadzki, (*see, e.g.,* Dkt. 1 at 11 ("upon defendant's 3 thru 21 [sic] entry into the residence they unconstitutionally, without probable cause, searched [his] person")), violates the prohibition against group pleading as the Court cannot plausibly infer that while executing a search warrant the seventeen individual Municipal Defendants collectively searched and arrested him. *See Smith v. Arrowood*, No. 6:21-CV-6318 EAW, 2022 WL 3927884, at *5 (W.D.N.Y. Aug. 31, 2022) ("simply lump[ing] defendants together for pleading purposes" violates Rule 8's "requirement that a pleading give each defendant fair notice of the claims against it").

Before the Court can determine whether the § 1983 unlawful search or false arrest claim may proceed, Plaintiff must clarify his allegations against the individual Municipal Defendants by providing additional detail as to how and when the officers conducted their

search of his person. *See Miller v. City of New York*, No. 23-93, 2024 WL 3271998, at *2 (2d Cir. July 2, 2024) ("[O]fficers executing a search warrant on a premises may perform a 'limited search,' . . . or 'patdown,' . . . on any occupant they encounter, without reasonable suspicion that the occupant is concealing contraband." (first quoting *Rivera v. United States*, 928 F.2d 592, 606 (2d Cir. 1991) and then quoting *United States v. Jaramillo*, 25 F.3d 1146, 1151 (2d Cir. 1994))). He must also clarify which Defendant(s) detained him at 29 Avenue C and for how long, which Defendant(s) searched him, and which Defendant(s) arrested him. Accordingly, at this stage, the unlawful search and false arrest claims are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim, but with leave to amend.

Plaintiff is cautioned that even if plausibly alleged, *Heck* may bar or delay his § 1983 false arrest claim. *See Covington v. City of New York*, 171 F.3d 117, 123 (2d Cir. 1999) ("In a case where the *only* evidence for conviction was obtained pursuant to an arrest, recovery in a civil case based on false arrest would necessarily impugn any conviction resulting from the use of that evidence."); *see also Hughey v. Wagner*, No. 23-CV-6270-DGL, 2023 WL 6445796, at *3 (W.D.N.Y. Oct. 3, 2023) ("If Plaintiff intended to assert claims exclusively upon dismissed state charges, to avoid the *Heck*-bar, he must demonstrate that the dismissed state charges are unrelated to the pending federal charges." (citing cases)).[7]

---

[7]    The Court interprets the complaint as alleging that the state criminal charges were dismissed in lieu of the federal prosecution. If this is incorrect, Plaintiff may clarify in any amended complaint.

Because Plaintiff alleges that the search of his person yielded no evidence (Dkt. 1 at 11-12 ("[T]heir search of my person turned up absolutely nothing incriminating or any contraband . . . .")), it is unlikely that Plaintiff's unlawful search claim would be barred by *Heck*.  *See Redar v. Suffolk Cnty. Police Dep't 6th Precinct*, No. 25-CV-00120-SJB-ARL, 2025 WL 2250505, at *3 (E.D.N.Y. July 2, 2025) (finding that *Heck* does not require dismissal of an unlawful search and seizure claim where "there is nothing to suggest that any conviction—should [the plaintiff] be convicted—would or even could hinge on evidence of a search that allegedly produced 'nothing'").

In any event, whether or not the unlawful search and false arrest claims are *Heck* barred, an eventual stay of these claims may be warranted because of the pending criminal proceeding.  *See id.* (staying claims not barred by *Heck* pending resolution of a parallel criminal proceeding (citing cases, including *Robinson v. City of New York*, No. 24-CV-3283, 2024 WL 3318132, at *2 (S.D.N.Y. 2024) (staying false arrest, excessive force, and unlawful search and seizure claims to "potentially avoid a wasteful duplication of resources"))).  Plaintiff may attempt to address these possible *Heck* bars in the amended complaint.

### C.    Motion for Immediate Release

Plaintiff's motion asks the Court to add a request for immediate release to the relief section of his complaint.  (Dkt. 4).  Because "habeas corpus [is] the exclusive remedy for prisoners challenging the fact or duration of their confinement," *Boudin v. Thomas*, 732 F.2d 1107, 1111 (2d Cir. 1984) (citing *Preiser v. Rodriguez,* 411 U.S. 475 (1973)), any request for release from imprisonment is dismissed without prejudice to the proper filing

of a petition for a writ of habeas corpus, which must wait until the conclusion of his criminal prosecution.  *See* 28 U.S.C. § 2255.[8]

### D.    Motion to Appoint Counsel

Under 28 U.S.C. § 1915(e)(1), "[a] court may request an attorney to represent any person unable to afford counsel."  The Second Circuit has stated that "[i]n deciding whether to appoint counsel [under § 1915] . . . the district judge should first determine whether the indigent's position seems likely to be of substance."  *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986).  "If the claim meets this threshold requirement," the judge should weigh other factors, including "the indigent's ability to investigate the crucial facts," "whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder," "the indigent's ability to present the case," "the complexity of the legal issues," and "any special reason . . . why appointment of counsel would be more likely to lead to a just determination."  *Id.* at 61-62.

At this early stage, where no claims are proceeding to service, the Court lacks sufficient information to weigh the factors.  That said, even though no claims survived screening, Plaintiff has ably presented his case thus far.  The next step in this proceeding

---

[8]    Notably, Plaintiff has already challenged his pretrial detention in a habeas petition presented to District Judge Meredith A. Vacca.  By order dated July 22, 2025, Judge Vacca dismissed the petition, explaining that "where a defendant is awaiting trial, the appropriate vehicle for violations of his constitutional rights are pretrial motions or the expedited appeal procedure provided by the Bail Reform Act, 18 U.S.C. § 3145(b), (c), and not a habeas corpus petition."  *Parker v. United States*, No. 25-CV-6330-MAV, 2025 WL 2675759, at *1 (W.D.N.Y. Sept. 18, 2025).  The Second Circuit dismissed Plaintiff's appeal of Judge Vacca's decision because the appeal "lack[ed] an arguable basis either in law or in fact."  *See Parker v. United States of America*, No. 25-1912, slip op. (2d Cir. Dec. 30, 2025).

is for Plaintiff to draft and file an amended complaint.  All the information Plaintiff needs to draft an amended complaint is being provided to him and in amending his complaint Plaintiff need only provide "a short and plain statement" of the facts "showing that [he] is entitled to relief."  *See* Fed. R. Civ. P. 8(a).  Plaintiff therefore has no need to make legal arguments when amending his complaint.  For these reasons, the Court denies Plaintiff's motion to appoint counsel, (Dkt. 5), without prejudice.  If Plaintiff's amended complaint survives screening and proceeds to service, he may renew his motion to appoint counsel at that time, if appropriate.

## **CONCLUSION**

For the reasons set forth above, the following are dismissed without leave to amend: all claims against Judge Holland, Eldridge, Kraham, LaColla, Eckerd, United States Customs and Border Protection, Homeland Security Investigations, the Rochester Police Department, the Monroe County Sheriff's Office, and the § 1983 malicious prosecution and fair trial claims.  Plaintiff may amend to clarify his allegations supporting his unlawful search and false arrest claims against the individual Municipal Defendants and to attempt to allege that the constitutional violations were caused by a policy or custom of Monroe County or the City of Rochester.  Plaintiff's motions are denied without prejudice.

Plaintiff may file an amended complaint by **no later than 45 days from the entry of this Decision and Order** in which he includes the necessary allegations as directed above and in a manner that complies with Rules 8 and 10 of the Federal Rules of Civil Procedure.

Plaintiff is advised that an amended complaint **completely replaces** the prior complaint in the action, and thus it "renders [any prior complaint] of no legal effect." *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977). Therefore, any amended complaint must include all allegations against each Defendant so that the amended complaint stands alone as the only complaint in this action.

Plaintiff is further advised that he has been granted leave to amend only the official capacity (*Monell*) claim and the unlawful search and false arrest claims against the individual Municipal Defendants. A district court has the inherent authority to dismiss claims that exceed the scope of the court's order granting leave to amend. *See Palm Beach Strategic Income, LP v. Salzman*, 457 F. App'x 40, 43 (2d Cir. 2012) (collecting cases).

### ORDER

IT HEREBY IS ORDERED that Plaintiff's motion to proceed IFP (Dkt. 2), is granted; his motion to add immediate release to the relief section of his complaint (Dkt. 4) is denied without prejudice; and his motion for appointment of counsel (Dkt. 5) is denied without prejudice, and it is further

ORDERED that the Clerk of Court is directed to amend the caption as set forth above; and it is further

ORDERED that the official capacity claims against Judge Holland, Eldridge, Kraham, LaColla, and Eckerd, and the claims against United States Customs and Border Protection and Homeland Security Investigations are dismissed on the basis of sovereign immunity under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2) without prejudice and without leave to amend; and it is further

ORDERED that all claims against the Rochester Police Department and the Monroe County Sheriff's Office are dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) without leave to amend; and it is further

ORDERED that the individual capacity claims against Judge Holland are dismissed without leave to amend on the basis of absolute judicial immunity and as frivolous under 28 U.S.C. §§ 1915(e)(2)(B)(i), (iii) and 1915A(b)(1), (2); and it is further

ORDERED that the individual capacity claims against Eldridge are dismissed without leave to amend on the basis of absolute prosecutorial immunity and for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B)(ii), (iii) and 1915A(b)(1), (2), and it is further

ORDERED that the individual capacity claims against Kraham, LaColla, and Eckerd are dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) without leave to amend; and it is further

ORDERED that Plaintiff's § 1983 malicious prosecution and fair trial claims are dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) without leave to amend but without prejudice to refiling in a new action if and when Plaintiff can show that his prosecution ended without a conviction; and it is further

ORDERED that claims against the Rochester Police Department and the Monroe County Sheriff's Office are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim and without leave to amend; and it is further

ORDERED that the unlawful search and false arrest claims against the individual Municipal Defendants and any potential *Monell* claims are dismissed under

28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim, but with leave to amend; and it is further

ORDERED that the Clerk of Court is directed to terminate from this case: United States Customs and Border Protection, CBP Agent J. LaColla, CBP Agent Adam Eckerd, Homeland Security Investigations, HSI Investigator Aaron Kraham, Assistant United States Attorney Sean Eldridge, United States Magistrate Judge Colleen D. Holland, the Rochester Police Department, and the Monroe County Sheriff's Office; and it is further

ORDERED that Plaintiff may file an amended complaint as directed above by **no later than 45 days from the entry of this Decision and Order**; and it is further

ORDERED that the Clerk of Court shall send to Plaintiff with this Decision and Order a copy of the original complaint, a blank § 1983 complaint form, and the instructions for preparing an amended complaint; and it is further

ORDERED that if Plaintiff does not file an amended complaint by the deadline set by the Court, the complaint shall remain dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(i), (ii), (iii) and 1915A(b)(1), (2) and the Clerk of Court shall enter judgment in favor of Defendants and close this case; and it is further

ORDERED that this Court hereby certifies, under 28 U.S.C. § 1915(a)(3), that any appeal from this Decision and Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure; and it is further

ORDERED that pursuant to Western District of New York Local Rule of Civil Procedure 5.2(d), Plaintiff must immediately notify the Court in writing each time his address changes.  Failure to do so may result in dismissal of the action with prejudice.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: March 2, 2026
       Rochester, New York